204 N.J. Super. 166 (1985)
497 A.2d 1276
K.P., P.D., E.M., B.J., ET AL., INDIVIDUALLY AND ON BEHALF OF ALL THOSE SIMILARLY SITUATED AT TRENTON PSYCHIATRIC HOSPITAL, P.W., K.P., P.D., ET AL., INDIVIDUALLY AND ON BEHALF OF ALL THOSE SIMILARLY SITUATED AT TRENTON PSYCHIATRIC HOSPITAL, APPELLANTS,
v.
GEORGE ALBANESE, COMMISSIONER, DEPARTMENT OF HUMAN SERVICES, RICHARD WILSON, ACTING DEPUTY COMMISSIONER, DEPARTMENT OF HUMAN SERVICES, DENNIS LAFER, ACTING DIRECTOR, DIVISION OF MENTAL HEALTH AND HOSPITALS, FRANK CUOMO, CHIEF EXECUTIVE OFFICER, TRENTON PSYCHIATRIC HOSPITAL, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 1985.
Decided August 9, 1985.
*169 Before Judges MORTON I. GREENBERG, O'BRIEN and GAYNOR.
*170 Joseph F. Suozzo and Arthur J. Rosenberg, Assistant Deputy Public Advocates, argued the cause for appellants (Amy R. Piro, Acting Public Advocate, attorney; Joseph F. Suozzo and Arthur J. Rosenberg, of counsel and on the brief).
Susan R. Oxford, Deputy Attorney General, argued the cause for respondents (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel and on the brief; Susan R. Oxford also on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
These consolidated appeals challenge the program promulgated by the Department of Human Services, Division of Mental Health and Hospitals, and policies adopted at the Trenton Psychiatric Hospital pertaining to patients' privileges as they affect civil committees who have been ordered discharged pending appropriate placements.
The appellants, on behalf of themselves and other patients at the Trenton Psychiatric Hospital (TPH) who have been, or will be, adjudicated eligible for discharge from the hospital pending appropriate placement (DPP), initiated an action in the Chancery Division by the filing of a class action complaint, subsequently amended, and by obtaining an order directing the respondents to show cause why the system employed at TPH to control their liberty should not be designed and implemented so that their hospital environment is no more restrictive than the placement to which they are to be discharged, and why the "Privilege Levels System for Grounds Passes" in effect at TPH should not be voided as violative of their constitutional and statutory rights. The respondents moved for a dismissal of the complaint or summary judgment in their favor contending that appellants' rights were not being violated by the policy concerning the patients' privileges. In response, appellants cross-moved for summary judgment and to strike certain portions of *171 the affidavit of respondent, Frank Cuomo, Chief Executive Officer at Trenton Psychiatric Hospital, which had been submitted in support of respondents' motion for summary judgment. The parties having acknowledged the absence of any factual issues, the matter was decided without trial. The court denied appellants' motions for summary judgment and the striking of portions of the Cuomo affidavit and their application for class certification. Respondents' motion to dismiss the complaint was denied but their motion for summary judgment was granted. The present appeal followed.
Appellants also appeal to this court from the final action of the Department of Human Services, Division of Mental Health and Hospitals, and TPH, in promulgating the standards for patients' privilege levels and the hospital's policy and procedures in implementing the system.
The appeals were consolidated by order of this court.
In denying the requested relief in the Chancery action, Judge Levy concluded that despite appellants' classification as DPP's the hospital had a duty to provide appropriate care for them penidng their placement which validly could result in some restriciton of their liberty as determined by clinical evaluations. In his view, insuring appellants a safe and orderly transition to an appropriate placement required their continued confinement at a privilege level commensurate with their physical and mental condition, and that this purpose was being served by application of the privilege levels system in effect at TPH. Further, if the clinical decision was disputed, the administrative procedures within the hospital system provided a suitable and adequate remedy. Application for certification as a class action was denied as the judge considered the general prerequisites of a class aciton had not been established.
In challenging this determination, appellants contend it improperly denies them the right to an environment commensurate with and no more restrictive that the placement to which they have been ordered discharged, it impermissibly permits *172 them to be treated as if they were still civil committees and deprives them of significant liberty interests without due process. They further claim that the existence of a dispute as to material facts precluded a summary disposition and administrative remedies available to them were insufficient to address their objections to the restrictions imposed upon their liberty by application of the privilege levels system in the hospital. Additionally, appellants assert the court erred in denying their request for class certification and their motion to strike certain portions of the Cuomo affidavit.
Appellants argue that having been discharged pending placement they are entitled to enjoy an environment which is no less restrictive than the setting to which they have been ordered discharged, and that this right is being denied because of the restrictions on their freedom of movement which may be imposed by reason of the unbounded clinical discretion permitted under the privilege levels system in effect at TPH. It is urged this system thus permits clinicians to make decisions regarding their liberty without affording them even the barest notion of due process. They claim there is no legal basis for placing greater restrictions on their movement while awaiting placement at the hospital then will be imposed once they are discharged to the community, and that, in fact, their statutorily granted rights are abrogated by the operation of the privilege levels system at TPH. Additionally, appellants contend that subjecting them to this system improperly permits the hospital to treat them as if they were still civil committees, thereby disregarding their discharged status.
It is further asserted by appellants that the TPH procedure providing for a patient's request for review of treatment is an inadequate remedy as their claims do not present matters of treatment but questions of liberty over which a clinician cannot be presumed to have any expertise as in matters of treatment. They further suggest that such an administrative review would be futile.
*173 In attacking the procedure followed in the adoption and promulgation of the privilege standards and policies, appellants point out it was accomplished without notice, without providing an opportunity for public comment and without publication in total contravention of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1, et seq. Accordingly, they urge this court to invalidate the regulations for failure to comply with the rule-making procedural requirements of the APA.
In response, respondents assert that Judge Levy applied the correct standard of review of a state administrative policy and properly ruled on the cross-motions for summary judgment that the challenged procedures did not violate appellants statutory or constitutional rights. They further contend he did not err in ruling that appellants' administrative remedies with respect to individual complaints must be utilized before seeking judicial relief or that class certification was not appropriate. Respondents also argue that the regulations were promulgated in accordance with their statutory authority to regulate the internal administration of State psychiatric hospitals and thus this action was exempt from the procedural requirements of the APA.
Trenton Psychiatric Hospital is one of several State psychiatric facilities operated by the New Jersey Department of Human Services, Division of Mental Health and Hospitals. N.J.S.A. 30:1-7, N.J.S.A. 30:1-9. Respondents are the officials responsible for administering TPH and overseeing the care and treatment provided to the patients therein until they are actually discharged from the hospital. N.J.S.A. 30:4-5 and 6. By way of exercising his statutory responsibilities to safeguard patients within his custody and to provide them with appropriate medical care and other professional services, the chief executive officer of TPH, pursuant to the Division's regulations, instituted the levels of privilege system complained of by appellants. This system now provides four levels of privileges designed so that the individual needs and circumstances of patients may be met in the exercise of their freedom of movement, with Level I *174 being the most restrictive of patients' liberties and Level IV the least restrictive. The Privilege Levels Systems as promulgated and applied by respondents at TPH contain the following provisions pertinent to appellants' contentions:
I. POLICY
A. Statement
The privilege Levels System at Trenton Psychiatric Hospital is designed in conjunction with the Division of Mental Health and Hospital's mandate for a uniform process for granting privileges to all patients. Treatment Teams will assign each patient to a privilege level in concert with the definitions noted in this policy and the Patient's Bill of Rights.

B. Purpose
The Privilege Levels System assures that each patient will be afforded the least restrictive treatment environment congruent with his/her clinical needs and level of functioning that assures a safe environment while maximizing a patient's opportunity for programming.
II. DEFINITIONS
LEVEL I: The patient does not go off the ward unless escorted, for those essential services not provided on ward.
Off the ward essential services, as determined by the treatment team and documented in the patient's clinical record, may include, but are not limited to, recreation, special medical services and clinics.
LEVEL II: The patient may attend programs on or off grounds with escort.
Programs on this level will typically include rehabilitative services and other therapeutic modalities.
LEVEL III: The patient may have limited off the ward privileges without escort.
These privileges will be defined by time accountability and purpose of program.
LEVEL IV: The patient has full privileges.
The patient may attend any recommended program without escort on or off the grounds. Programs are recommended by the treatment teams.
III. GENERAL
* * * * * * * *
C. A patient may be discharged from any level, when documented as clinically appropriate.
D. A patient does not have to go through each level in sequence.
* * * * * * * *
F. All patients Discharged Pending Placement by the Court are considered appropriate for the least restrictive setting (Level IV). If their [sic] are clinical indicators to the contrary, the treatment team must meet within twenty-four hours to evaluate and identify those clinical indicators which *175 require a Level other than Level IV to ensure the safety and security of the patient. Such determinations will be documented in the clinical record by the treatment team.
* * * * * * * *
IV. PROCEDURES
* * * * * * * *
C. Patient's level of privileges will be evaluated minimally every two weeks by the treatment team, or sooner if requested by patient.
D. Minimum time spent at each privilege level will be determined by the treatment team based upon the individual patient's clinical needs and treatment goals.
E. Patients will progress in sequence to increased levels of privileges upon revaluation [sic] and determination by the treatment team unless otherwise documented in the treatment plan by the treatment team.
* * * * * * * *
H. Grounds passes will be issued to represent levels III and IV:
1. These passes will be filled out and signed by treatment team leader.
2. Patients may not be on grounds without staff escort after the following designated hours regardless of the assigned privilege level.
a. 5:00 P.M.  November, December, January, February, and March;
b. 7:00 P.M.  April, May, September, and October;
c. 8:00 P.M.  June, July, and August.
In accordance with the stated policy, the staff at TPH have been directed that patients in the DPP category are to be presumed eligible for Level IV privileges unless a more restrictive status is clinically warranted, considering, among other factors, the restrictiveness of the placement to which the patient is planned to be discharged.
On or about October 1, 1984 all DPP patients were reevaluated under this privileging system and their levels designated accordingly. Patients ordered DPP since then have been evaluated and assigned a privilege level on an on-going basis.
Initially, we note the well established principle that in evaluating the validity of a State administrative rule or policy a presumption of validity and reasonableness must be accorded to the agency action, and the burden is on the challenger to overcome such presumption. Bergen Pines Hosp. v. Dept. of Human Serv., 96 N.J. 456, 477 (1984). The standard of review *176 to be applied is whether the administrative policy is arbitrary, capricious or unreasonable or beyond the ambit of the agency's delegated powers. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561 (1978). Also, "the grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities and ... courts should readily employ such incidental powers as are necessary to effectuate fully the legislative intent." Id. at 562. And, a liberal construction of the agency's authority is particularly appropriate when the agency's concern is the protection of the health and welfare of the public. N.J. Ass'n of Health Care Facilities v. Finley, 83 N.J. 67, 79, app. dism., 449 U.S. 944, 101 S.Ct. 342, 66 L.Ed.2d 208 (1980). Moreover, we are cautioned that a court may not substitute its judgment as to the wisdom of an administrative action so long as it is statutorily authorized and not otherwise defective because arbitrary or unreasonable. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. at 562-563.
Viewing the challenged regulations in the light of these standards of review, we cannot conclude that the trial court erred in denying the relief sought by appellants. We consider that the implementation of the privilege levels system at TPH, as it affects appellants and others in the category of DPP's, does not violate their statutory right to the least restrictive environment or their constitutional rights to liberty and due process. The regulations being challenged are reasonable and consistent with the hospital's responsibility for the care of patients pending their discharge to community facilities. We therefore affirm Judge Levy's determination as to the validity of these regulations.
Although those determined to have a DPP status may not be dangerous to themselves or others, their release from a commitment does not necessarily mean they possess the mental and physical capability of fully caring for themselves in an unstructured environment. The dependency of those in this category *177 was recognized by the Court in In re S.L., 94 N.J. 128, 140-141 (1983), in prescribing a procedure for the care of such persons while awaiting placement:
When a court determines at a commitment review hearing conducted pursuant to R. 4:74-7(f) that an individual is no longer dangerous to self, others or property by reason of mental illness, the individual shall be entitled to leave the mental hospital and re-enter the community. The court, however, shall make a further inquiry to determine whether the individual is capable of leaving the institution. If the court determines that the individual is not able to survive in the community independently or with the help of family or friends, the court shall direct that the individual remain in the institution, but immediately schedule a placement review hearing to occur within 60 days. At this hearing the court shall inquire into the needs of the individual for custodial and supportive care, the desires of the individual regarding placement, the type of facility that would provide the needed level of care in the least restrictive manner, the availability of such placement, the efforts of the State to locate such placement and any other matters it deems pertinent. In the event that placement can be arranged in a facility able to provide the care needed in a setting not unduly restrictive of liberty, the court shall order such placement. If immediate placement is not possible, the court shall continue the individual's confinement, require that the individual be placed in the environment least restrictive of his or her liberty within the institution, and schedule a subsequent placement review hearing to occur within six months. While the individual remains confined in the institution, all reasonable efforts within available resources shall be made to improve the individual's ability to function in a placement outside the mental hospital.
Although the committability of persons suffering from mental illness is ultimately a legal decision, their care and treatment during hospitalization or while in a supervised residency are matters properly within the realm of medical expertise. As we noted in In re Hospitalization of Patterson and Bohuk, 156 N.J. Super. 91, 97 (App.Div. 1978), certif. den. 77 N.J. 469 (1978), there is a "fundamental distinction between commitment in contrast to placement and treatment," with the latter appropriately being resolved initially by the professional staff. The care and treatment of patients having the status of DPP, pending their placement, requires that their freedom be subject to clinical considerations. Otherwise, their well-being during this provisional confinement would not be protected or furthered nor would their safe and orderly transition to the proposed placements be ensured. We consider restrictions *178 thereby placed upon appellants' liberties to be a proper exercise of respondents' statutory responsibility to provide for those confined to TPH, and other similar State hospitals, and to be within the standards applicable to DPP's as enunciated in In re S.L., 94 N.J. 139-140. For these same reasons, the exercise of clinical judgment in assigning a privilege level to effectuate treatment goals does not impinge upon appellants' right under N.J.S.A. 30:4-24.2, the Patient's Bill of Rights, to the least restrictive conditions necessary to achieve the purposes of treatment, or their federal constitutional right to liberty. See Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).
Having concluded that the application of the privilege levels system to appellants and others within the DPP classification is a proper and valid exercise of respondents' authority, it is unnecessary to pursue at length the objections to Judge Levy's rulings concerning class certification or the necessity of exhausting administrative remedies. We observe that appellants do not meet the requirements of R. 4:32-1 for class certification. Since the clinical needs and the individual capabilities of patients awaiting placement vary considerably, there are no questions of fact common to the class nor would the claims and defenses of the representative parties be typical of the claims or defenses of the class. Moreover, a class action is not superior to other available methods for the fair and efficient adjudication of the controversy, as interests of the proposed class can be adequately served by a suit challenging the regulation. R. 4:32-1(b)(3).
While appellants understandably assert pursuit of administrative remedies will not provide them the relief sought, namely, the invalidation of the privilege levels system as applied to them, they do not question the court's application of the rule requiring exhaustion of administrative remedies in individual cases where clinical judgment is considered erroneous. The court's reference to the available administrative remedies was *179 in the context of objections by individual patients concerning their clinical evaluations.
Appellants' claim that Judge Levy erred in deciding the matter on the cross-motions for summary judgment is without merit. As indicated, this procedure was followed only after both parties acknowledged the absence of any factual issues. Clearly, the issue presented involved the legal question of whether the TPH privilege levels system was violative of appellants statutory and constitutional rights. This was properly resolvable as a matter of law in a summary proceeding. The recognition that appellants, and other patients discharged pending placement, presented different clinical evaluations as to their ability to function in the least restrictive environments did not introduce factual issues precluding a summary disposition of the complaint. This was merely an indication that considerations other than the type of placement to which a DPP would eventually be discharged were appropriate to the hospital's responsibility to undertake "all reasonable efforts within available resources ... to improve the individual's ability to function in a placement outside the mental hospital." In re S.L., 94 N.J. at 141. In acting upon the parties' motions, it was not necessary to consider the circumstances of individual patients as explained in the Cuomo affidavit, nor was the judge's decision based upon such considerations.
While we find that the implementation of the privilege levels system at TPH as it affects appellants does not offend their rights as DPP's, we are satisfied their objection to the procedure followed by the agency in the promulgation of these regulations is well founded. We cannot agree with respondents' contention that as the regulations related to the internal management of the hospitals, they were exempt from the rulemaking requirements of the APA. These regulations clearly constitute an administrative rule as they amount to an "agency statement of general applicability and continuing effect that implements or interprets law or policy...." N.J.S.A. *180 52:14B-2(e). Respondents' reliance on Avant v. Clifford, 67 N.J. 496 (1975), is misplaced as there the Court was concerned with rules and procedures formulated for internal discipline in penal and correctional institutions and considered them within the concept of "internal affairs" because of being "so inextricably involved in and vital to the fulfillment of responsibilities for institutional governance...." Id. at 556. While a program for a privilege levels system in TPH and other psychiatric hospitals is an important element in the exercise of the responsibilities of the Division of Mental Health and Hospitals, it is not so vital to the operation of a hospital as are disciplinary rules governing inmates of penal and correctional facilities.
It is undisputed there was no compliance with the procedural requirements of APA in the adoption of the subject regulations. The informal invitation to the Public Advocate to participate in developing guidelines for policies pertaining to the privilege levels policy is no substitute for the notice, hearing and publication requirements of the act. Nor are appellants estopped from now asserting the agency's noncompliance because of the Public Advocate's failure or refusal to participate in the development of the policy. We do not understand the holding in Bergen Pines Hosp. v. Dept. of Human Serv., 96 N.J. 456 (1984), to require such a conclusion.
Although we conclude the challenged regulations are invalid for failure to comply with the formal rulemaking procedures of the APA, we do not consider it in the best interest of the hospital patients or the agency to permit a void in this area of patient care. Accordingly, the matter is remanded to the Division of Mental Health and Hospitals for the purpose of the readoption of these regulations in accordance with the procedure set forth in the APA. Pending such compliance, the present system as now being implemented and applied to appellants and other patients having the status of DPP's shall remain in effect. We do not retain jurisdiction.