PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY *v.* TIMOTHY F. BANNON, COMMISSIONER OF REVENUE SERVICES
(15170)

PETERS, C. J., and BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued March 21—decision released May 23, 1995

*Bourke Spellacy*, with whom were *Medina K. Jett* and, on the brief, *Karen P. Blado*, for the appellant (plaintiff).

*Paul M. Scimonelli*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

PETERS, C. J. The sole issue in this tax appeal is whether payments that insurance companies doing business in New Jersey are required to make to the New Jersey Unsatisfied Claim and Judgment Fund (UCJF) constitute "other obligations" for purposes of the application of this state's retaliatory tax under General Statutes (Rev. to 1985) § 12-211.[1] The plaintiff,

---

[1] General Statutes (Rev. to 1985) § 12-211 provides in relevant part: "RECIPROCITY. When by the laws of any other state or foreign country any premium or income or other taxes or any fees, fines, penalties, licenses,

Prudential Property and Casualty Insurance Company (taxpayer), was assessed retaliatory taxes[2] by the defendant, the commissioner of revenue services (commissioner), for the years 1982 through 1985, on the basis of UCJF charges in New Jersey during those years. After its protest to the assessments was denied by the commissioner, the taxpayer filed this administrative appeal in the trial court, arguing that UCJF assessments are not "other obligations" within the meaning of § 12-211 that trigger imposition of the retaliatory tax. The trial court rejected the taxpayer's argument and rendered judgment dismissing the

deposit requirements or other obligations, prohibitions or restrictions are imposed upon Connecticut insurance companies doing business in such other state or foreign country, or upon the authorized agents thereof, which are in excess of such taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions directly imposed upon insurance companies, or upon the authorized agents thereof, of such other state or foreign country doing business in Connecticut, so long as such laws continue in force the same obligations, prohibitions and restrictions of whatever kind, computed by the commissioner of revenue services on an aggregate statewide or foreign-country-wide basis, shall be imposed upon insurance companies and authorized agents thereof of such other state or foreign country doing business in Connecticut."

[2] Retaliatory tax statutes "provide, in the main, that whenever the laws of a particular state impose greater burdens and limitations upon companies organized in the enacting state, and doing business in such other state, than are imposed by the laws of the enacting state upon foreign companies doing business in that state, then the same burdens and prohibitions imposed by the foreign state shall be imposed by the enacting state upon such companies of the foreign state." 43 Am. Jur. 2d 137–38, Insurance § 51 (1982). As the United States Supreme Court has observed, " 'their ultimate object is not to punish foreign corporations doing business in the state, or retort the action of the foreign state in placing upon corporations of the enacting state doing business therein burdens heavier than those imposed upon corporations of such foreign state doing business in the enacting state, but to induce such foreign state to show the same consideration to corporations of the enacting state doing business therein as is shown to corporations of such foreign state doing business in the enacting state.' " *Western & Southern Life Ins. Co.* v. *Board of Equalization,* 451 U.S. 648, 668–69, 101 S. Ct. 2070, 68 L. Ed. 2d 514 (1981), quoting annot., 91 A.L.R. 795 (1934).

appeal.[3] The taxpayer appealed from that judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse.

The parties have stipulated to the facts. At all times relevant to this appeal, the taxpayer was a New Jersey domiciled insurance company serving motor vehicle insurance policyholders in Connecticut. For the tax years 1982 through 1985, the taxpayer filed returns and paid premium taxes, including retaliatory taxes, totaling $881,933.63. See General Statutes §§ 12-210, 12-211. Following an audit by the department of revenue services, the commissioner, on the basis of the respective annual UCJF assessments, imposed additional retaliatory taxes for the years 1982 through 1984 totaling $251,311.98 against the taxpayer. The commissioner subsequently imposed an additional UCJF-related retaliatory tax for 1985 in the amount of $67,622.22. The commissioner denied the taxpayer's timely protest of the initial and subsequent assessments, and the taxpayer timely appealed from the denial of both protests to the trial court.

The trial court relied on several grounds to affirm the commissioner's denial of the taxpayer's protest. First, the court read the history of the retaliatory tax provision to indicate that the legislature had intended "aggressively" to pursue its goals. Second, the court

[3] In its administrative appeal, the taxpayer also sought relief from the commissioner's imposition of interest and penalties. In addition, the taxpayer sought credit against its tax assessments for payments it had made to the Connecticut Assigned Claims Plan (plan) in the relevant tax years totaling $7637.60. The trial court approved the imposition of interest charges but it determined that penalties were inappropriate under the facts of this case and that the taxpayer was entitled to credits for its payments to the plan. The commissioner has not challenged either determination on appeal. In light of our conclusion that the UCJF assessments were not subject to retaliatory taxation, we further hold that there was no basis for imposition of interest on the unpaid assessments.

looked to a series of sister state decisions to support the commissioner's interpretation of the "other obligations" language of the statute. Finally, the court determined that a 1987 legislative amendment to § 12-211 that excludes special purpose assessments from the retaliatory tax base was not intended to clarify the existing statute and therefore does not apply retroactively.

The dispute between the parties is a narrow one. The commissioner does not suggest that any language other than the "other obligations" phrase in § 12-211 provides a basis for imposition of the tax assessments here in question. Furthermore, the commissioner does not contest the taxpayer's characterization of UCJF charges as special purpose assessments.[4] Rather, the

---

[4] In essence, the UCJF operates as a form of reinsurance for insurance companies writing motor vehicle premiums in New Jersey. UCJF funds are employed to satisfy the unpaid claims of certain judgment creditors arising out of the use of a motor vehicle in the state, in return for assignment of the judgment from the creditor to the commissioner. See N.J. Stat. Ann. §§ 39:6-69, 39:6-77 (West 1990). Those funds are raised through an annual special purposes assessment against each insurer licensed to write insurance in the state. The UCJF is administered by the Unsatisfied Claim and Judgment Fund Board (board), a board that, by statute, is "established in, but not a part of, the Department of Insurance." N.J. Stat. Ann. § 39:6-64 (West 1990). The board is comprised of the insurance commissioner and four insurer representatives designated by the commissioner, one for each of four enumerated classes of insurance companies. Each representative must be an employee or officer of an insurer in the represented class, and no member of the board may receive any remuneration from the UCJF. N.J. Stat. Ann. § 39:6-64 (West 1990). The commissioner annually calculates the probable amount of funds that will be necessary to carry out the purposes of the UCJF. Once that calculation has been made, the commissioner assesses against each insurer a proportional fraction of that amount, determined according to the proportion that each insurer's net direct written premiums bear to the aggregate of all such premiums written in the state during the previous year. N.J. Stat. Ann. § 39:6-63 (West 1990). The insurers pay the assessments to the treasurer of the state, who receives them in trust as custodian of the UCJF. N.J. Stat. Ann. §§ 39:6-62, 39:6-63, 39:6-88 (West 1990).

commissioner argues that, even though they are special purpose assessments, UCJF charges, because they are collected pursuant to the taxing authority of the state, necessarily constitute "other obligations" within the contemplation of § 12-211. Accordingly, the commissioner asserted in oral argument before this court that *any* financial imposition assessed by a state government for any purpose is an "other obligation."

"It is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature." (Internal quotation marks omitted.) *Mulligan* v. *F. S. Electric*, 231 Conn. 529, 536, 651 A.2d 254 (1994); *In re Valerie D.*, 223 Conn. 492, 512, 613 A.2d 748 (1992). That analysis involves the application of various tools of construction to resolve whatever ambiguity may inhere in the statute. See generally *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 133, 653 A.2d 798 (1995); *Mulligan* v. *F. S. Electric*, supra, 536. Two presumptions in particular would ordinarily govern the interpretation of the tax statute in this case. First and foremost, any ambiguity in a tax imposition statute, such as § 12-211, is to be construed in favor of the taxpayer. *Foodways National, Inc.* v. *Crystal*, 232 Conn. 325, 331, 654 A.2d 1228 (1995); *Altray Co.* v. *Groppo*, 224 Conn. 426, 432, 619 A.2d 443 (1993); *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 54, 607 A.2d 424 (1992). Second, the statute's general term "other obligations" is to be construed to embrace things of the same general kind or character as the more specific terms enumerated in the statute. See, e.g., *State* v. *Russell*, 218 Conn. 273, 278, 588 A.2d 1376 (1991); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 47.17, p. 166 (ejusdem generis).

In this case, however, we need not rely on these surrogates to determine the intent of the legislature, because the legislature has specifically addressed the question before us. In an amendment to § 12-211

enacted in 1987, the legislature stated expressly that the retaliatory tax shall not apply to, inter alia, "special purpose assessments imposed in connection with particular kinds of insurance . . . ." Public Acts 1987, No. 87-557, § 1 (P.A. 87-557); General Statutes (Rev. to 1995) § 12-211. The legislative history of P.A. 87-557 affords little doubt that the legislature adopted the 1987 amendment to clarify its original intent in enacting § 12-211. In the Senate, Senator William A. DiBella stated in support of the amendment: "This Bill would provide [that] the retaliatory tax imposed on insurance companies in other states doing business in Connecticut would not be applicable for special purpose assessments. Special purpose assessments [were] never envisioned to be part of the retaliatory tax base." 30 S. Proc., Pt. 13, 1987 Sess., p. 4803. Similarly, in the House of Representatives, Representative Ronald L. Smoko explained: "What this bill does is make clear to our Department of Revenue Services, that our intention is not to consider special assessment fund contributions made by Connecticut insurers to out-of-state guarantee funds such as guaranteed assessment funds, second injury assessment funds, catastrophic property tax funds as part of the premium tax . . . that they are paying in those jurisdictions." 30 H.R. Proc., Pt. 34, 1987 Sess., p. 12,471.

This court long has recognized that "a subsequent amendment to an existing statute may clarify the legislature's original intent." (Internal quotation marks omitted.) *Pollio* v. *Planning Commission*, 232 Conn. 44, 56, 652 A.2d 1026 (1995); *Daly* v. *DelPonte*, 225 Conn. 499, 511, 624 A.2d 876 (1993). "An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act." (Internal quotation marks omitted.) *Kluttz* v. *Howard*, 228 Conn. 401, 409, 636

A.2d 816 (1994); *Shelton* v. *Commissioner*, 193 Conn. 506, 513–14, 479 A.2d 208 (1984). Applying this principle to the present case, we are persuaded that the legislature never intended special purpose assessments like the UCJF charge to trigger imposition of the retaliatory tax under § 12-211.[5] The commissioner, therefore, improperly assessed the additional UCJF-related retaliatory taxes against the taxpayer for the tax years 1982 through 1985.

Between the time of the audit and the time of the trial court proceedings, the parties resolved certain issues relating to the taxpayer's returns for the tax years in question. A remand therefore is necessary for the limited purpose of accepting a stipulated recalculation of the parties' obligations originally contained in the tax returns.

The judgment is reversed and the case is remanded to the trial court with direction to accept the parties' stipulated recalculation.

In this opinion the other justices concurred.

---

[5] Our conclusion that P.A. 87-557 was intended to clarify the original meaning of § 12-211 is not altered by the language in the 1987 act that it "shall take effect on July 1, 1987." P.A. 87-557, § 2. The purpose of this language in the act was to accelerate its effective date from the default date of October 1 provided by statute. See General Statutes § 2-32 ("[a]ll public acts, except when otherwise therein specified, shall take effect on the first day of October following the session of the general assembly at which they are passed"). We have construed other public acts that contained identical language to be clarifying amendments that must be given retroactive effect. See, e.g., *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 390, 618 A.2d 1340 (1993) (amendment to General Statutes § 31-349 effected by No. 91-32 of the 1991 Public Acts clarified original legislative intent; amending act states in § 41 that it "shall take effect July 1, 1991"); *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 346–47, 612 A.2d 1203 (1992) (same).