KUSKIN, J.T.C.
Plaintiffs Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company, Massachusetts insurance companies doing business in New Jersey, seek refunds of taxes and interest paid by them for tax year 1992 pursuant to N.J.S.A. 17:32-15. This statute imposes upon insurers domiciled in a foreign state a tax (commonly referred to as the “retaliatory tax”) equal to the “premium or income or other taxes, or any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or *460 restrictions ... imposed upon New Jersey insurance companies ... doing business in such other state or foreign country, ... which are in excess of such taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions imposed upon insurance companies ... doing business in New Jersey____” Calculation of retaliatory taxes pursuant to this statutory language has been explained as follows:
The New Jersey Department of Insurance requires a foreign insurer to compute its New Jersey tax liability on its New Jersey business. The foreign insurer must then compute a hypothetical tax on its New Jersey business under the insurance tax laws applicable to foreign insurers in the insurer’s home state. If the amount of taxes computed in the second step exceeds the taxes computed in the first step, the Department advises defendant Director, Division of Taxation, of the difference, and defendant assesses that amount as retaliatory tax.
[Employers’Fire Ins. Co. v. Director, Div. of Taxation, 5 N.J. Tax 326, 331 (Tax 1983), aff'd, 6 N.J. Tax 613 (App.Div.1984).]
N.J.S.A. 17:32-15 further provides, as a result of a 1985 amendment to the statute, that its provisions “shall not apply to ... special purpose assessments imposed in connection with particular kinds of insurance.”
In 1990, the New Jersey Legislature enacted N.J.S.A. 17:33B-49(a), which imposed, for the years 1990, 1991 and 1992, “an annual surtax ... on all taxable [insurance] premiums collected in [New Jersey]----” In calculating plaintiffs’ respective retaliatory tax obligations under N.J.S.A 17:32-15 for 1992, the defendant Division of Taxation treated payments of the annual surtax (hereinafter the “Annual Surtax”) as payments of “special purpose assessments.” As a result, such payments were not credited as “taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions (collectively the “Impositions”) imposed ... [by New Jersey].” N.J.SA 17:32-15 Therefore, New Jersey’s Impositions were lower than the Impositions that would have been payable by a New Jersey insurer in Massachusetts, and retaliatory taxes were due. Plaintiffs contend that the Annual Surtax is not a “special purpose assessment,” and that their Annual Surtax payments for 1992 should be included as Impositions paid by them to New Jersey in computing their respective liability for retaliatory taxes. If Annual Surtax pay *461 ments are so included, the New Jersey Impositions paid by each of the plaintiffs exceed the hypothetical Impositions payable by a New Jersey insurance company doing business -in Massachusetts, so that the retaliatory taxes assessed by defendant would not be due.
The refund claim by Liberty Mutual Insurance Company is for the sum of $110,440.77, consisting of $82,043.86 of retaliatory taxes and $28,396.91 of interest. The refund claim by Liberty Mutual Fire Insurance Company is for the sum of $482,353.45, consisting of $342,381.76 in retaliatory taxes and $139,971.69 in interest. The matter is before me on cross-motions for summary judgment with the relevant facts and documents either stipulated or not disputed.
Although defendant argued in its brief that factual disputes existed as to the significance and proper interpretation of certain statements contained in the stipulated documents, and further suggested that it wished to present testimony as to its position if its motion for summary judgment was denied, defendant’s argument was unsupported by certifications establishing the existence of such factual disputes. Accordingly, at the conclusion of oral argument of the motions, I ruled that no such factual disputes existed and that the matter was ripe for determination on the cross-motions for summary judgment. Brill v. Guardian Life Ins. Co. of Am,., 142 N.J. 520, 666 A.2d 146 (1995).
Neither the retaliatory tax statute, N.J.S.A. 17:32-15, nor the Annual Surtax statute, N.J.S.A 17:33B-49, contains definitional language which would assist the court in determining whether, for purposes of retaliatory tax computations, the Annual Surtax constitutes a “special purpose assessment.” Similarly, no reported court decisions interpret the phrase “special purpose assessments” in a manner that provides assistance in resolving this issue. The court must, therefore, interpret the statutes based upon the available sources and resources. These are: (a) the limited legislative history with respect to the amendment to N.J.S.A. 17:32-15 which excluded “special purpose assessments” from retaliatory tax computations, (b) terminology used in the legislation which included the statutory provision, N.J.S.A. 17:33B-49, imposing the An *462 nuai Surtax, (c) terminology used by the Legislature in other statutes relating to insurance, (d) committee statements to related proposed legislation, (e) administrative interpretations, and (f) documents contained in the files of the Counsel to the Governor relating to the aforesaid amendment to N.J.S.A 17:32-15. Although limited in quantity and scope, these sources and resources provide consistent and compelling guidance in determining whether the Annual Surtax constitutes a “special purpose assessment” under N.J.SA 17:32-15.

Background

Retaliatory taxes, such as those imposed by N.J.SA 17:32-15, have been enacted in most states in the United States.
Retaliatory tax laws are a fact of life in the existence of any insurance company that does business on a national level. Each state which has sufficient number of domiciliary companies doing such business has a retaliatory tax law, the purpose of which is to protect its domestic insurance companies from the imposition by a sister state of taxes or other costs of doing business which exceed the costs of doing business in the domiciliary state. Where a state imposes such higher costs of doing business upon insurance corporations of another state the latter state retaliates by imposing the same costs upon the insurance companies of that state conducting business within its borders. Although such statutes may incidentally produce revenue, the primary purpose sought to be achieved is to compel the foreign state imposing greater costs to lower the “premium or income or other taxes, ... fees, fines, penalties, licenses, deposit requirements or other obligations,” or to remove any “prohibitions or restrictions ... imposed upon” the insurance companies of the domiciliary state.
[Employers’ Fire Ins. Co. v. Director, Div. of Taxation, 6 N.J. Tax 613, 615-16 (App.Div.1984) (citations omitted).]
N.J.S.A 17:32-15 was originally enacted in 1950 and was amended in 1985. As set forth above, this amendment, L. 1985, c. 88, § 1, provided for the exclusion from retaliatory tax computations of “special purpose assessments.” The amendment emanated from the decision of the Tax Court in Employers’ Fire Ins. Co. v. Director, Div. of Tarnation, supra, 5 N.J. Tax 326, which considered the status, for retaliatory tax purposes, of contributions required by N.J.S.A 34:15-94 to the Second Injury Fund. This Fund was created by the Legislature “[t]o relieve employers from the burden of paying for disabilities which were unrelated to the injured worker’s employment, and to encourage the hiring of *463 partially disabled employees, who might not otherwise be hired due to an employer’s fear of a potential liability to compensate for a total disability____” Id. at 329. Employers’ Fire Insurance Company and its co-plaintiffs were Massachusetts insurance companies doing business in New Jersey. They contended that required contributions to the Fund constituted “other obligations” as such term was used in N.J.S.A. 17:32-15, and thus were to be credited in determining Impositions paid to New Jersey. The Tax Court agreed. In affirming the Tax Court, the Appellate Division held:
The [retaliatory tax] statute dearly and with deliberation intends to include all financial burdens and all restrictions laid upon New Jersey insurers by a sister state. Assessments levied by a state to fund a second injury program are obviously within this all indusive statutory net. They are state imposed payments assessed against and payable by all insurers who write workers’ compensation insurance and are a cost of doing that business.
[Employers’ Fire Ins. Co. v. Director, Div. of Taxation, supra, 6 N.J. Tax at 620-21.]
The holdings by the Tax Court and Appellate Division, that the Second Injury Fund contributions constituted “other obligations” for purposes of retaliatory tax computations, provoked a direct response by the Legislature. L. 1985, c. 88, § 1 amended N.J.S.A. 17:32-15 so as to exclude “special purpose assessments” from the Impositions otherwise considered in computing retaliatory tax liability. The Senate Revenue Finance and Appropriations Statement to this amendatory legislation notes:
As amended, this Bill [Senate Bill No. 1749,] would amend the State’s retaliatory tax law applicable to foreign (out-of-State) property and casualty insurers to exclude “special purpose assessments” from any retaliatory tax computation. In doing so, the bill reverses the holding of the New Jersey Tax Court in Employers[] Fire Insurance Company v. Director, 5 N.J. Tax 326 (1983). That decision construed New Jersey’s retaliatory tax statute (P.L.1950, c. 231) as requiring the State to include its Second Injury Fund assessments on domestic companies in any retaliatory tax computation of an out-of-State insurer.
The Annual Surtax imposed by N.J.S.A 17:33-49 was part of the Fair Automobile Insurance Reform Act of 1990, L. 1990, c. 8 (the “FAIR Act”). The FAIR Act constituted part of the ongoing effort by the State of New Jersey to provide automobile insurance for high risk drivers. As described by the Supreme Court, “[t]he principal goals of the Act were to reduce insurance costs for most *464 New Jersey drivers, to depopulate the [New Jersey Automobile Full Insurance Underwriting Association, commonly known as the Joint Underwriting Association or JUA] by switching insureds to the voluntary market, and to create a funding mechanism to pay off the JUA debt.” State Farm Mutual Auto. Ins. Co. v. State, 124 N.J. 32, 42, 590 A.2d 191 (1991). The history preceding the FAIR Act, and the functioning of the Act, are described at length in the State Farm Mutual decision. There is no need to repeat such description here.
The FAIR Act established the New Jersey Automobile Insurance Guarantee Fund as an instrumentality to pay the JUA debt. Under N.J.S.A 17:33B-49(e), the revenues generated by the Annual Surtax were to be credited to this Fund. N.J.S.A 17:33B-50 granted the Director of the Division of Taxation the authority to vary the rate of the Annual Surtax, such rate not to exceed five percent, so that the revenues generated would equal $300,000,000 for the three years during which the Annual Surtax was in effect. N.J.S.A 17:33B-50(d) provided that, if the revenue generated by the Annual Surtax exceeded $300,000,000 for such three year period, “[t]he director shall refund any such revenues collected in excess of $300,000,000 to taxpayers in proportion to each taxpayer’s share of total surtax payments made for the three calendar years.”

Contentions of the Parties

Plaintiffs do not dispute that the revenues generated by the Annual Surtax are dedicated to a special purpose. Plaintiffs contend, however, that such dedication does not cause the Annual Surtax to constitute a “special purpose assessment” for retaliatory tax purposes. Plaintiffs assert that “assessment” is a term used by the Legislature to refer to impositions which produce direct and corresponding benefits to the party paying the assessment. Plaintiffs assert that the assessments to which N.J.S.A 17:32-15 refers are similar to special assessments imposed on real property. Such assessments are statutorily required to be proportional to the increment in value caused by an improvement installed by a *465 municipality or other governmental agency. See N.J.S.A. 40:56-27. Plaintiffs argue that neither they, nor any other insurers who were obligated to pay the Annual Surtax, received any benefit from such payments since the monies were utilized solely to discharge a portion of the JUA debt.
In support of their position, plaintiffs rely primarily upon American Alliance Ins. Co. v. State Bd. of Equalization, 134 Cal.App.3d 601, 184 Cal.Rptr. 674 (Ct.App.1982). In this case, the California Court of Appeals interpreted provisions of the California retaliatory tax which excluded from the tax calculation “special purpose obligations or assessments heretofore imposed by another state or foreign country in connection with particular kinds of insurance.” Id. at 676 (citations omitted) The plaintiff, an Arizona insurance company doing business in California, contended that revenues generated by premium taxes levied on workers’ compensation insurers by Arizona were “special purpose obligations or assessments” and could not be used in calculating hypothetical taxes payable by a California insurer doing business in Arizona. The revenues generated by the Arizona tax were held by the state treasurer and credited to an administrative fund used to defer the expenses of the tribunal responsible for the adjudication of workers’ compensation claims. Any surplus was transferred to a special fund used to provide additional compensation to various categories of injured employees. This special fund was also available to pay workers’ compensation claims not paid by an insurer or self-insured employer.
The California court, in rejecting the insurer’s contentions, adopted the real property concept of “special assessment,” that is, an imposition “levied for benefits conferred.” Id. at 676. The court acknowledged that the purpose of the retaliatory tax was not to raise revenue but to cause other states to maintain low taxes on California insurers, and concluded that:
[T]his purpose would not be served by permitting other states to avoid the effect thereof by merely earmarking the result of such taxes to be used for specific state purposes. If, of course, the application of the tax revenue were applied in such a manner as to confer a benefit upon the taxpayer in exchange for the tax, then to such an extent the California insurer would not be burdened by the tax and there *466 would be no occasion to apply the retaliatory tax. The maintenance of the Arizona Industrial Commission, the providing of compensation to various classes of injured employees, and the providing of reimbursement to the Arizona State Compensation Fund in no way benefits the workers’ compensation insurers who pay such taxes.
[Id. at 677.]
The California court also expressed significant concern as to the impact of accepting the insurer’s concept of a special purpose assessment, and stated that accepting such interpretation
would create a loophole of such proportions as to in effect eradicate the retaliatory taxation provisions of the California Constitution and the Insurance Code. It would permit a foreign jurisdiction to heavily tax a particular class of insurer by the simple expedient of adjusting its bookkeeping methods so that the proceeds of the taxes would be designated for a particular purpose, thus benefiting the general fund by relieving it of the obligation to pay an ordinary governmental expense.
[Id. at 677]
Defendant herein rejects the concept that an “assessment” can exist only if the parties subject to the assessment receive direct and corresponding benefits from its payment. Defendant argues that a “tax” is an imposition resulting in revenues which are applied for the benefit of the general public, citing San Juan Cellular Tel. Co. v. Public Serv. Comm’n of Puerto Rico, 967 F.2d 683, 685 (1st Cir.1992); United States v. Munoz-Flores, 495 U.S. 385, 110 S.Ct. 1964, 109 L.Ed.2d 384 (1990). Defendant argues that the following characteristics of the FAIR Act Annual Surtax distinguish this imposition from a “tax”:
1. the revenues generated by the Annual Surtax are dedicated to a specific purpose, namely, reducing the JUA debt, and are not available to be used for the benefit of the general public;
2. the amount of revenue to be collected is specifically limited to a maximum of $300,000,000 over three years;
3. the rate of imposition of the Annual Surtax is subject to adjustment by the Director of the Division of Taxation so that the estimated revenues will not exceed $300,000,000;
4. any revenues collected in excess of $300,000,000 are required to be refunded to the respective insurance companies; and
5. an insurer determined to be in unsafe or unsound financial condition can receive an exemption, abatement or deferral of its *467 obligations for Annual Surtax under the provisions of N.J.S.A. 17:3313-52, -53, and -54, with only the Commissioner of Insurance having the authority to require that any amounts so abated or deferred be paid.
Defendant also argues that the Annual Surtax is not a fee, fine, penalty, license, deposit requirement or other obligation, prohibition or restriction, as such terms are used in N.J.S.A. 17:32-15.
Defendant’s position is that, even though the amendment to N.J.S.A. 17:32-15 which excluded “special purpose assessments” was intended specifically to reverse the Tax Court’s holding in Employers’ Fire Ins. Co. v. Director, supra, 5 N.J. Tax 326, the Legislature’s use of the term “special purpose assessments” indicates an intent to exclude broader categories of obligations from the statutory tax computation. Defendant contends that, just as the Second Injury Fund was dedicated to a special purpose, so, too, is the Annual Surtax. Accordingly, defendant concludes that payments of the Annual Surtax should not be included as Impositions paid to New Jersey in retaliatory tax computations.
In support of its position, defendant relies upon several out-of-state decisions holding that, under the laws of those states, revenues generated for special purposes were not includable for retaliatory tax computations. E.g., State Farm Mut. Auto. Ins. Co. v. Long, 497 S.E.2d 451 (N.C.App.1998) (holding that a regulatory charge of 7.25% of the premium tax paid by all insurers doing business in North Carolina, the proceeds of which were used to cover the projected operating deficit of the North Carolina Department of Insurance, was not a “premium tax” under the retaliatory tax statutes because the revenues were usable only for such operating deficit, and the amount collected could not exceed the amount of the deficit); Prudential Property and Cas., Ins. Co. v. Bannon, 233 Conn. 243, 658 A.2d 567 (Conn.1995) (holding that required payments to the New Jersey Unsatisfied Claim and Judgment Fund under N.J.S.A. 39:6-69 constituted “special purpose assessments” under the Connecticut retaliatory tax statute).

*468
Legislative History

Because neither N.J.S.A 17:32-15 nor N.J.S.A 17:33B-49 contains provisions which would either resolve, or suggest the proper resolution of, the issue before the court, and because no New Jersey court has confronted the issue or articulated a definition of the phrase “special purpose assessments,” resort to legislative history is both necessary and appropriate. Interpretations of the phrase “special purpose assessments” or similar terminology by courts of other states are of little assistance in interpreting N.J.S.A 17:32-15 and N.J.S.A 17:33B-49, because, in the absence of an express statutory definition, this court must determine the meaning of the phrase “special purpose assessments” based upon the intent of the New Jersey Legislature. See American Tel. & Tel. Co. v. Director, Div. of Taxation, 13 N.J. Tax 534, 541-42 (Tax 1993) (concluding that rulings of the courts of other jurisdictions provide little, if any, aid to a New Jersey court in interpreting a statute of this State). Unfortunately the legislative history is meager and provides only limited assistance.
The amendment to N.J.S.A 17:32-15 which excluded “special purpose assessments” from retaliatory tax calculations was effected, as set forth above, by L. 1985, c. 88. The Senate Bill containing the amendment, S. 1749, initially excluded from retaliatory tax calculations “special purpose obligations or assessments.” Prior to enactment, the words “obligations or” were deleted from the Bill. This implies a legislative desire to restrict the items excluded from the tax computation.
The only other legislative history appears in the Senate Revenue, Finance and Appropriations Committee Statement to S. 1749. A portion of this Statement, setting forth that such Bill was intended to reverse the Tax Court’s decision in Employers’ Fire Ins. Co., is quoted above. The Statement also includes the following:
This bill clarifies the original intent of the retaliatory tax statute to exclude special assessments relating to specific types of insurance coverage. In doing so, this legislation would bring P.L.1950, c. 231 [N.J.S.A, 17:32-15] into conformance with the existing retaliatory tax statute for life insurance companies.
*469 The retaliatory tax statute applicable to life insurance companies is N.J.S.A. 17B:23-5 which excludes from the tax computation “special purpose obligations or assessments imposed by another State or province in connection with particular kinds of insurance____” There is no legislative history or reported decisional law construing or explaining this language.
The foregoing legislative history demonstrates that, in defining the exclusions from retaliatory tax computations as “special purpose assessments” and not as “Second Injury Fund assessments,” the Legislature did not intend to limit the exclusion to Second Injury Fund assessments. Furthermore, the deletion of the expansive term “obligations” from S.1749 indicates that the Legislature did not intend the phrase “special purpose assessments” to be broadly inclusive. The phrase referred to certain kinds of impositions. In order to determine if the Annual Surtax is one of those impositions, additional sources must be examined.

The FAIR Act

The amendment to the retaliatory tax excluding “special purpose assessments” became effective March 26, 1985. The FAIR Act, which included the Annual Surtax as one of its 103 sections, was enacted on March 12,1990. In determining whether the Annual Surtax constitutes a “special purpose assessment” under the retaliatory tax statute, I must assume that, in denominating the imposition contained in N.J.S.A 17:33B-49 as a “surtax,” the Legislature was familiar with the exclusion of “special purpose assessments” from the retaliatory tax statute. Mahwah Tp. v. Bergen County Bd. of Taxation, 98 N.J. 268, 279, 486 A.2d 818, cert. denied sub nom. Demarest Bor. v. Mahwah Tp., 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985) (holding that, “[t]he Legislature is presumed to have been aware of existing legislation at the time it adopted [the statute].”); County of Essex v. Commissioner, N.J. Dep’t. of Human Servs., 252 N.J.Super. 1, 10-11, 599 A.2d 167 (App.Div.1991) (holding that: “[S]ince the Legislature enacted the statute a court presumes thorough familiarity with the Legislature’s own prior enactments----”).
*470 The FAIR Act includes several indicia of the legislative intent in selecting the word “surtax.” Subsection (a) of N.J.S.A 17:33B-49 begins: “In addition to the tax on net premiums paid pursuant to Section 1 of P.L.1945, c. 132 (C. 54:18A-1), each taxpayer under that section shall pay to the Director of the Division of Taxation an annual surtax at a rate of 5%, or a rate adjusted pursuant to section 77 of this 1990 amendatory and supplementary act____” (emphasis added) (footnote omitted). Subsection (c) of this statute refers to “the calculation of the tax due in accordance with subsection a. of this section____” (emphasis added). The “tax” due under subsection (a) is the Annual Surtax. No other “tax” is imposed by such subsection. Subsection (c) also provides for the payment of installments of the Annual Surtax for the tax year 1990, and subsection (d) provides:
Failure to pay any installment payment required pursuant to subsection c. of this section shall constitute a deficiency, and there shall be added to the tax for the calendar year interest on the amount of underpayment as provided in the State Tax Uniform Procedure Law, R.S. 54:48-1 et seq., for the period of the underpayment, [emphasis added.]
The foregoing provisions of N.J.S.A 17-.33B-49 suggest that the Legislature considered the surtax to be a “tax”.
The distinction between the terms “surtax” and “assessment” is also evidenced by the FAIR Act provisions which amended N.J.S.A . 17:30A-1 to -20. As originally enacted, these statutes created the New Jersey Property-Liability Insurance Guaranty Association (“PLIGA”) and required all property and automobile insurers to be members of the Association. The FAIR Act amendments granted PLIGA the authority, under N.J.S.A 17:30A-8(a), 9 and 10, to assess member insurers in amounts necessary for PLIGA to make loans to the New Jersey Automobile Insurance Guaranty Fund in the amount of $160,000,000 per year to be used to reduce the JUA debt. In amending N.J.S.A 17-.30A-8 so as to provide another source of funds to be utilized to pay the JUA debt, the Legislature authorized PLIGA to:
(9) Assess member insurers in amounts necessary to make loans pursuant to paragraph (10) of this subsection [which provides for loans to the New Jersey Automobile Insurance Guaranty Fund of $160,000,000 per calendar year1 during the period 1990 to December 31, 1997]. The estimated assessments of each member *471 insurer shall be in the proportion that the net direct written premiums of the member insurer for the calendar year preceding the assessment bears to the net direct written premiums of all member insurers for the calendar year preceding the assessment with actual assessments adjusted in the succeeding year based on the proportion that the assessed member insurer’s net direct written premiums in the year of assessment bears to the net direct written premiums of all member insurers for that year.
[N.J.S.A. 17:30A-8(a)(9).]
The apportionment of PLIGA assessments among member insurers in proportion to the ratio of each insurer’s premiums to the aggregate premiums of all member insurers is, in all essential respects, identical to the form of imposition of the Second Injury-Fund which the Legislature specifically intended to be included within the phrase “special purpose assessments,” as indicated by the 1985 amendment to N.J.S.A 17:32-15. The Second Injury Fund, in the form considered by the Tax Court and Appellate Division in Employers’ Fire Ins. Co., supra, 5 N.J. Tax 326, required each workers’ compensation insurer to pay an amount to the Commissioner of Labor and Industry based upon the ratio of the total compensation payments by each insurer to the total compensation payments made by all insurers during the preceding calendar year.
The Annual Surtax imposed by N.J.S.A 17:3313-49 is not apportioned based upon each insurer’s share of premiums or claims. The surtax is imposed as a flat rate, subject to adjustment by the Director of the Division of Taxation. The amounts assessed for PLIGA and the Second Injury Fund can, of course, be translated into a “rate,” but, as those statutes are structured, the rate is a function of the amount of the imposition, and the amount of the imposition is not a function of the rate. The Annual Surtax, by contrast, is imposed as a rate, subject to adjustment.
A further legislative distinction between the Annual Surtax and the PLIGA assessments appears in the statutes relating to exemption, abatement or deferral of obligations to pay the Annual Surtax and PLIGA assessments. As to both the Annual Surtax and PLIGA assessments, the Commissioner of Insurance has the authority to cause the Director of the Division of Taxation to exempt, abate or defer the obligation. N.J.S.A 17:33B-52, -53, - *472 55 and -56. N.J.S.A. 17:33B-57 provides that, if a PLIGA assessment against a member insurer is exempted, abated or deferred, “the amount by which such assessment is exempted, abated or deferred shall be assessed against the other member insurers in a manner consistent with the basis for assessment set forth in paragraph (9) of subsection a. of section 8 of P.L.1974, e. 17 (C. 17:30A-8).” No such re-allocation provision is applicable to the Annual Surtax. N.J.S.A. 17:33B-54 authorizes the Commissioner of Insurance to order that the Director of the Division of Taxation require the insurer to pay Annual Surtax obligations which had previously been exempted, abated or deferred, but those obligations are not re-allocated among the other insurers subject to the Annual Surtax.

Other Statutes Relating to Insurance

Statutes, other than the PAIR Act, which relate to insurance, and which provide for the imposition of “assessments,” contain provisions similar to those described above with respect to PLI-GA. For example, N.J.S.A 17B:32A-5 establishes the New Jersey Life and Health Insurance Guarantee Association, and all life and health insurance companies doing business in New Jersey are required to be members. The purpose of the Association is to protect beneficiaries of insurance policies from hardship resulting from the financial impairment or insolvency of any member insurer. Under N.J.S.A. 17B:32A-8, funding for the Association is provided by the Association’s imposing “assessments” on member insurers. Assessments for administrative and legal costs of the Association are made by using a formula determined by the Board of Directors of the Association. Assessments to provide funds to carry out the main responsibilities of the Association are based upon the premiums received by each member as a proportion of the premiums received by all members. N.J.S.A. 17B:32A-8(b) and (c). Under subsection (d) of this statute, the Association has the right to exempt, abate, or defer the assessments of a member insurer and, in such event, the amount so exempted, abated, or deferred is assessed against the other members proportionately.
*473 N.J.S.A 17:1C-19 to -32 impose an assessment upon ail insurance companies for purposes of funding costs incurred by the State of New Jersey “in connection with the administration of the special functions of the Department of Insurance relative to the financial regulation, supervision and monitoring of insurers and health maintenance organizations during the preceding fiscal year.” N.J.S.A. 17:lC-20(a). The obligations of the insurance companies are apportioned based upon premiums received by each as a proportion of the total premiums received by all companies writing a specific insurance or coverage within the State during the calendar year. These impositions are referred to as “special purpose apportionments” in N.J.S.A 17:10-20. N.J.S.A 17:10-31, however, refers to “all special purpose assessments made pursuant to applicable law as of the effective date of this act, including the special purpose apportionment established by this act____” It is evident, therefore, that the Legislature regarded a special purpose apportionment as the equivalent of a special purpose assessment. As with the other “assessments” described above, this particular “apportionment” is imposed based upon an insurer’s premiums as a proportion of the aggregate premiums of all insurers. As with the other assessments described above, the apportionment can be translated into a rate of imposition, but the Legislature has not structured the imposition in that fashion. The rate is a function of the amount of the imposition, and the amount of the imposition is not a function of the rate.
N.J.S.A 39:6-63 creates the Unsatisfied Claim and Judgment Fund and requires automobile liability insurers to contribute the moneys necessary to pay the obligations of the Fund. The statute requires the Commissioner of the Department of Banking and Insurance to determine the annual amount required for the Fund’s operations, and such amount is “assessed against insurers” and apportioned among them based upon the net direct written premiums of each as a proportion of total net direct written premiums of all automobile liability insurers doing business in New Jersey. The amounts so apportioned are also described as “assessments” in N.J.S.A 39:6-63.1 and N.J.A.C. 11:3-28A.1 to .3. The assess *474 ments are payable to the State Treasurer acting as custodian for the Fund.[1]
Each of the foregoing “assessments” has most, or all, of the following characteristics:
1. The statute denominates the obligation as an “assessment” not as a “tax” or “surtax.” This difference in terminology has been recognized by our courts. See In re American Reliance Ins. Co., 251 N.J.Super. 541, 546, 598 A.2d 1219 (App.Div.1991); certif. denied, 127 N.J. 556, 606 A.2d 369 (1992), and American Fire & Casualty Co. v. New Jersey Dep’t. of Ins., 256 N.J.Super. 423, 427, 607 A.2d 196 (App.Div.1992) both of which distinguish between the “surtax” imposed pursuant to N.J.S.A. 17:33B-49 and the PLIGA “assessment” imposed pursuant to N.J.S.A 17:30A-8.
2. The assessment is imposed not by the Director of the Division of Taxation or directly by statute as a tax “rate,” but rather by an association created by statute. The association generates required revenue by apportioning or allocating the amount to be raised among member insurers.
3. The amounts payable by member insurers are not payable to the Director of the Division of Taxation but to the statutorily-created association. The definition of “state tax” contained in the State Tax Uniform Procedure Law confirms the significance of to whom an imposition is payable. A state tax is defined as “any tax which is payable to or collectible by the director____” N.J.S.A. 54:48-2.
4. The statute does not provide for the application of the State Tax Uniform Procedure Law, N.J.S.A 54:48-1 eb seq.
5. An assessment which is exempted, abated or deferred is reallocated among the other association members.
The Annual Surtax imposed by N.J.S.A 17:53B-49 enjoys none of the foregoing characteristics. The imposition is designated as a *475 “surtax” not an “assessment” or “apportionment.” It is imposed by statute as a “rate”, which rate may be adjusted by the Director of the Division of Taxation. The Annual Surtax is payable to the Director and not to an association created by statute, and the State Tax Uniform Procedure Law applies. Annual Surtaxes which are exempted, abated, or deferred are not re-allocated among other insurers, and remain the obligation of the insurer on which they were initially imposed.

Committee Statements to Related Proposed Legislation

The preceding analysis of the FAIR Act and related statutes is consistent with Committee Statements to Senate Bill 2525 of the 1990 Legislative Session. This Bill would have amended the retaliatory tax provisions of N.J.S.A. 17:32-15 to eliminate the retaliatory tax as to property and casualty insurance companies domiciled in states which did not themselves impose retaliatory taxes or whose laws contained a similar reciprocal non-retaliation provision. The Bill was never enacted, and, therefore, the Committee Statements are not legislative history. The Statements do, however, provide assistance in determining whether the Annual Surtax is a “special purpose assessment” under N.J.S.A 17:32-15. See Ramac Explosives, Inc. v. Director, Div. of Taxation, 64 N.J. 551, 554, 319 A.2d 65 (1974) (Pashman J., dissenting) (stating that, although not legislative history, a Tax Policy Committee Report was “significant and revealing” in connection with interpreting a statute). The Statement to S.2525 of the Senate Revenue, Finance and Appropriations Committee, dated September 24, 1990, contained the following language in evaluating the fiscal impact of the proposed legislation:
Moreover, if and to the extent that the higher automobile surtax rates imposed temporarily under the “Fair Automobile Insurance Reform Act of 1990,” P.L.1990, e. 8 (C.17:33B-1 et al.) may trigger a loss in retaliatory taxes (because with the 5% surtax, New Jersey’s tax rate will be higher than most other states), there would probably be no additional loss during the temporary imposition period. At the end of this three-year period, the revenue loss described above would apply.
The identical paragraph appears in the Assembly Appropriations Committee Statement to this Bill dated October 18, 1990. The parenthetical clause, “because with the 5% surtax, New Jersey’s *476 tax rate will be higher than most other states”, expresses the understanding of the Senate and Assembly Committees that the five percent surtax should be included for purposes of calculating retaliatory tax obligations. Only if the Annual Surtax is so included, would the “higher automobile surtax rate” imposed under the FAIR Act result in a loss of retaliatory tax revenue by the State of New Jersey.

Administrative Interpretations

Administrative determinations, relating to whether the Annual Surtax should be credited in retaliatory tax computations, are consistent with the foregoing Committee Statements. See In re The Comm’r of Insurance’s Issuance of Orders A-92-189 and A-92-212, 274 N.J.Super. 385, 644 A.2d 616 (App.Div.1993), aff'd o.b. 137 N.J. 93, 644 A.2d 576 (1994) where the court recognizes that the construction of a regulatory statute by the administrative agency responsible for the enforcement of the statute is “entitled to great weight” and is a “substantial factor to be considered” in interpreting the statute. Id. at 398, 644 A.2d 616. On January 23, 1991, Jasper J. Jackson, Deputy Commissioner of Insurance, wrote to the Assembly Insurance Committee in response to a request for advices concerning S.2525 (discussed above). His letter contains the following statement:
As previously noted, certain provisions of the FAIR Act have temporarily compromised New Jersey’s ability to impose retaliatory taxes in the property/casualty area and must be considered when evaluating the impact of these bills. New Jersey’s basic property/casualiy tax rate has been increased from 2% to 2.1%. In addition, a 5% surtax is imposed on private passenger auto insurance from 1990 through 1992. The overall impact of such increase on a property/casualty insurer would depend on its mix of business. Furthermore, there is a possibility that some states may consider the special guaranty fund assessment (2.67%) as a tax for retaliatory purposes. In any event, New Jersey appears to have temporarily lost its ability to retaliate in the property/casualty area so that passage of these proposals would produce no loss of revenue to New Jersey while offering an opportunity for our domestic property/casualty insurers to escape retaliation by other states.
This statement indicates that the Annual Surtax is included for retaliatory tax purposes.
*477 Consistent with Mr. Jackson’s comment is the Department of Insurance’s response to the filing by plaintiff Liberty Mutual Fire Insurance Company of an Amended Annual Report calculating its liability for retaliatory tax for the year 1990. In this Report, Liberty Mutual Fire increased its New Jersey tax payments by the amount of Annual Surtax paid, and showed a refund due of $224,332.10. On September 6, 1994, Hugh R. Schneider of the Special Audit Bureau of the Division of Taxation sent a memorandum concerning this refund claim to Fred Berger, an insurance examiner for the Department of Insurance, as follows:
As we discussed on the phone, assuming that the Auto Surtax is not a special purpose assessment, the company would be taxed on a New Jersey basis, since by adding the Auto Surtax to the Premium Tax, the total New Jersey tax liability would be greater than the tax determined on a Massachusetts basis. However, the amended certification still indicates the tax is determined using a Massachusetts basis and rates and also allows a credit for the amount of Auto Surtax. Please advise.
Mr. Berger responded: “The basis should be NJ [,]due to the fact that the Auto surtax is included it increases the tax liability of NJ.”
The stipulated facts indicate that defendant’s determinations at issue herein (that Annual Surtax payments cannot be included for retaliatory tax purposes) were “based on confirmed audit advice from the Department of Banking and Insurance that the private passenger surtax is an excludable ‘special purpose assessment’.” This position of the Department of Banking and Insurance is obviously inconsistent with the statutory interpretation reflected in the internal Department of Insurance documents discussed above. No explanation has been provided for the change in position by the administrative agency.

Files of the Counsel to the Governor

Documents contained in the files of the Counsel to the Governor relating to S. 1749 (the Bill amending N.J.S.A. 17:32-15 to exclude “special purpose assessments”) are generally consistent with the sources discussed above. The documents do not constitute legislative history to S.1749, but they do provide insights into the thinking of the Department of Insurance contemporaneous *478 with the enactment of such Bill. See Ramac Explosives, Inc. v. Director, Div. of Taxation, supra, 64 N.J. 551, 554, 319 A.2d 65 (Pashman, J., dissenting). One such document is a letter dated September 20,1984 from Kenneth D. Merin, Acting Commissioner of the Department of Insurance, to the Chief Counsel to the Governor (the “Merin Letter”), and another is an Intercommunication Memorandum dated November 1984 prepared by Jasper J. Jackson, then Director, of Legislative and Regulatory Affairs at the Department of Insurance (the “Jackson Memorandum”). The defendant has suggested (but has not established) that the Jackson Memorandum is a draft document and that the Merin Letter does not contain Mr. Merin’s personal signature. I will treat these documents as authentic because they are contained in the files of the Counsel to the Governor. I give the documents limited weight, however, due to the nature of their relationship to the legislative process.
S. 1749, as originally introduced, excluded “special purpose obligations or assessments.” from retaliatory tax computations. Both the Merin Letter and the Jackson Memorandum recommended that the word “obligations” be deleted from the Bill because “‘[o]bligation’ was considered too broad or expansive a term.” As described above, the Legislature made the recommended deletion. Both the Merin Letter and Jackson Memorandum set forth the following concern as a reason for their support of S. 1749:
Some language of the [Employers’ Fire Ins. Co.] case implies that there might be broader application of its holding, that is, other New Jersey special purpose assessments (ie. Automobile Insurance Risk Exchange, P.L.1983, c. 362, [N.J.S.A. 39:6A-21 to -22]; Insurance Fraud Unit, P.L.1983, c. 320 [N.J.S.A. 17:33A-8]) might have to be included in computing New Jersey’s retaliatory tax. Were these other special purpose assessments included in such computations, further tax “credits” would be required in New Jersey. The result would be a serious crediting problem which A[sic]-1749 is intended to circumvent.
N.J.S.A. 39:6A-21 creates the New Jersey Automobile Insurance Risk Exchange. Under N.J.S.A 39:6A-22, every insurer providing private passenger automobile insurance must pay a monthly “charge” to the Exchange. The amount of the charge is determined by the board of directors of the Exchange. N.J.S.A *479 17.-33A-8 establishes the Division of Insurance Fraud Prevention in the Department of Insurance. The expenses incurred for the operation of such Division are determined by the Director of the Division of Budget and Accounting and certified to the Commissioner of Insurance. The Commissioner then apportions such expenses among a broad spectrum of insurance companies in proportion to the net premiums of each company as related to the net premiums of all insurance companies writing the same type of insurance within New Jersey. Each company is required to pay the amount so apportioned to the Division of Taxation “in reimbursement to the State for the expenses paid.”
The foregoing impositions do not share some of the characteristics of the “assessments” discussed previously. However, the methodology under both N.J.S.A 39:6A-22 and N.J.S.A. 17:33A-8 for determination of the amounts imposed pursuant to such statutes, and for determination of the respective shares to be paid by obligated insurance companies (including the creation of administrative bodies to allocate or apportion such shares), is similar to the methodology contained in the “assessment” statutes and dissimilar to N.J.S.A. 17:33B-49 which imposes the Annual Surtax.[2]
Conclusion — Statutory Interpretation
The various sources and resources discussed above consistently indicate that the New Jersey Legislature considered the Annual Surtax to be different in kind from the “special purpose assessments” to which N.J.S.A 17:82-15 refers, and, therefore, did not intend the Annual Surtax to constitute a “special purpose assessment” in the context of retaliatory tax computations. Accordingly, I conclude that, in calculating plaintiffs’ respective liability for retaliatory tax, the Annual Surtax should be credited in determining Impositions paid by plaintiffs to New Jersey.
*480 My conclusion does not constitute acceptance or approval of the rationale contained in American Alliance Ins. Co. v. State Bd. of Equalization, supra, 184 Cal.Rptr. 674. Under that decision, a state imposition, whether described in the legislation as a tax, surtax, or assessment, or by some other term, would not be includable for retaliatory tax purposes if the party paying the imposition received a corresponding benefit for such payment. I reject plaintiffs’ contention that the American Alliance analysis is applicable to the issues before me.
There is logic to the California court’s approach, but determining whether an insurance company receives benefits from, or for, the payment of an imposition is often difficult. The California court concluded that assessments generating revenues used to support the Arizona Industrial Commission, and related uses, provided no benefit to workers’ compensation insurers who paid the assessments. Therefore, such assessments were not “special purpose assessments” imposed by Arizona. However, in Department of Revenue v. Zurich Ins. Co., U.S. Branch, 667 So.2d 365 (Fla.Dist.Ct.App.1995), the Florida court concluded that an assessment generating revenues used for a Workers’ Compensation Administration Board Fund was a special purpose assessment because “the program funded with this money was for the benefit of certain parties, and not all citizens generally.” Id. at 367.
I also reject the contention by defendant that the decision in San Juan Cellular Tel. Co. v. Public Serv. Comm’n. of Puerto Rico, supra, 967 F.2d 683 supports defendant’s position herein. In the San Juan Cellular case, Judge (now Justice) Breyer contrasted a tax with a regulatory fee and noted that when the classification of a particular imposition is not clear, courts
have tended (sometimes with minor differences reflecting the different statutes at issue) to emphasize the revenue’s ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency’s costs of regulation.
[Id. at 685.]
The proceeds of the imposition at issue in San Juan Cellular were used solely to pay expenses of the Puerto Rico Public Service *481 Commission for investigations, studies, hiring of experts, and equipment. The class of beneficiaries from the proceeds of the Annual Surtax is far broader. Thus, even under the San Juan Cellular test, the Annual Surtax is closer to a tax than a fund providing “narrow benefits.”
Conclusion — Statutory Ambiguity
Even if I were to conclude that the sources and resources discussed above did not enable me to reach a conclusion as to whether the Annual Surtax constituted a special purpose assessment for retaliatory tax purposes, at a very minimum, significant doubt would exist as to the issue. Under such circumstances, the court should proceed in accordance with the instructions of the Supreme Court in Fedders Fin. Corp. v. Director, Div. of Taxation, 96 N.J. 376, 476 A.2d 741 (1984):
Two principles of statutory interpretation are relevant to our analysis of this taxing statute. First, the court should follow the clear import of statutory language. Second, when interpretation of a taxing provision is in doubt, and there is no legislative history that dispels that doubt, the court should construe the statute in favor of the taxpayer____
In [Kingsley v. Hawthorne Fabrics, 41 N.J. 521, 528-29, 197 A.2d 673 (1964) ], we quoted approvingly the following language from Gould v. Gould, 245 US 151, 153, 38 S.Ct 53, 62 L. Ed. 211, 213 (1917):
In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen____
We continue to adhere to the view that our task is to ascertain the legislative intent. When the statutory language is unclear and the legislative history is wanting, the doubt referred to in Gould exists and its principle is applicable. This situation is to be distinguished from the one in which the taxpayer seeks an exemption from a taxing statute. Then the probable legislative intent is one of inclusion and exemptions are to be construed narrowly.
[Id. at 384-86,476 A.2d 741 (citations omitted).]
See also, Sutkowski v. Director, Div. of Taxation, 312 N.J.Super. 465, 475, 712 A.2d 229 (App.Div.1998) (stating that: “Even if there is an ambiguity attendant to the issue of a tax credit, the rule of construction is one that favors the taxpayer, not the government”).
Plaintiffs’ claims for refunds here are not claims for exemptions. The claims relate to the extent and calculation of the *482 plaintiffs’ respective tax obligations. Under the Fedders principle, doubts as to whether the Annual Surtax constitutes a special purpose assessment for retaliatory tax purposes should be resolved in favor of plaintiffs, that is, by construing the phrase “special purpose assessments” in N.J.S.A 17:32-15 as not including the Annual Surtax, and by treating Annual Surtax payments as Impositions paid to New Jersey which are to be credited in computing plaintiffs’ respective retaliatory tax obligations.

Estoppel

In concluding that Judgment should be entered in favor of plaintiffs, granting them the refunds which they seek, I give no weight to the argument by plaintiffs that the defendant is es-topped from denying the refunds based upon (a) assertions made by the defendant in its brief in Employers’ Fire Ins. Co. v. Director, Div. of Taxation, supra, 6 N.J. Tax 613, or (b) the administrative actions discussed above. The positions taken by defendant in the Employers’ Fire brief provide, at most, an indication of defendant’s definition of “assessment” in the context of a dispute as to whether the Second Injury Fund assessments constituted “other obligations” under the retaliatory tax statute. The administrative actions are, at most, only aids in interpreting the statutes in question. Neither the brief nor the administrative actions provide a basis for estoppel. The doctrine of estoppel is rarely applied against a public official or public entity, and, in order to invoke the doctrine, the party claiming the estoppel “must demonstrate detrimental reliance on the action or inaction of the official or entity.” Marrinan v. Director, Div. of Taxation, 17 N.J. Tax 47, 57 (Tax 1997). See also Black Whale, Inc. v. Director, Div. of Taxation, 15 N.J. Tax 338, 351-56 (Tax 1995). Plaintiffs have demonstrated no such detrimental reliance and, therefore, estoppel is not applicable.

Judgment

■ Judgment will be entered in favor of each of the plaintiffs, and against defendant, awarding plaintiff Liberty Mutual Insurance *483 Company a refund of $110,440.77 and awarding plaintiff Liberty Mutual Fire Insurance Company a refund of $482,353.45.
Plaintiffs’ Annual Reports setting forth retaliatory tax liability for 1992 were due on March 1, 1993, under N.J.S.A 54:18A-1. Accordingly, no interest is payable on the foregoing refunds pursuant to N.J.S.A. 54:49-15.1, which authorizes payment of interest only on tax overpayments with respect to reports or returns due on or after January 1,1994. No interest is payable on overpayments not covered by this statute. See Millington Quarry, Inc. v. Director, Div. of Taxation, 5 N.J. Tax 144, 154 (Tax 1983) (holding that interest was not payable on a sales tax refund where the taxes were voluntarily paid, payment was not a prerequisite to a judicial determination and there was no statutory authority for payment of interest).

 These assessments were determined to be "special purpose assessments” under the Connecticut retaliatory tax statute in Prudential Property and Cas. Ins. Co. v. Bannon, supra, 233 Conn. 243, 658 A.2d 567.

 This discussion of N.J.S.A. 39:6A-21 and ”22 and N.J.S.A. 17:33A-8 does not constitute a ruling that the obligations imposed by such statutes are “special purpose assessments" under NJ.S.A. 17:32-15. The court is not bound by the contents of the Merin Letter or Jackson Memorandum.